UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DELANY R. PERRY,

                Plaintiff,

  v.

MICHAEL J. ASTRUE. Commissioner of Social Security,

                Defendant.

Case No. 3:11-cv-05891-RBL-KLS

REPORT AND RECOMMENDATION

Noted for June 8, 2012

Plaintiff has brought this matter for judicial review of defendant's denial of her application for disability insurance benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits should be reversed and this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On February 27, 2009, plaintiff filed an application for disability insurance benefits, alleging disability as of July 15, 2005, due to depression, anxiety, obsessive compulsive disorder, trichotillomania, and headaches. See Administrative Record ("AR") 11, 107, 129. On June 25, 2009, her application was denied upon initial administrative review and on October 6, 2009, it

REPORT AND RECOMMENDATION - 1

was again denied on reconsideration. See AR 11, 56, 63. A hearing was held before an administrative law judge ("ALJ") on May 3, 2010, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 24-53.

On June 24, 2010, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 11-19. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on September 15, 2011, making the ALJ's decision defendant's final decision. See AR 1; see also 20 C.F.R. § 404.981. On October 31, 2011, plaintiff filed a complaint in this Court seeking judicial review of defendant's decision. See ECF #1. The administrative record was filed with the Court on January 9, 2012. See ECF #9. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision should be reversed and remanded for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical evidence in the record, (2) in discounting plaintiff's credibility, (3) in assessing her residual functional capacity, and (4) in finding her to be capable of performing her past relevant work. Plaintiff further argues defendant's decision should be reversed and remanded in light of additional objective medical evidence submitted for the first time to the Appeals Council. For the reasons set forth below, the undersigned agrees the ALJ erred in determining plaintiff to be not disabled. The undersigned therefore recommends that defendant's decision should be reversed and that this matter should be remanded for further administrative proceedings.

## DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).

REPORT AND RECOMMENDATION - 2

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.  The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881

REPORT AND RECOMMENDATION - 3

F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

    A.    Dr. Comrie and Dr. Clifford

The record contains a mental residual functional capacity assessment ("MRFCA") form completed by Matthew Comrie, Psy.D., in late June 2009, in which he found in relevant part that

REPORT AND RECOMMENDATION - 4

plaintiff would be able to perform simple, repetitive tasks, and that although "anxiety would slow work pace," she could "still be productive." AR 339. Those findings were affirmed by Thomas Clifford, Ph.D., in early October 2009. AR 376. With respect to Dr. Comrie's and Dr. Clifford's opinions, the ALJ found in relevant part as follows:

> . . . [Dr.] Comrie . . . cit[ed] the claimant's relatively unlimited activities of daily living, including shopping, spending time with her children, driving, traveling, shopping and running a household. Based on a review of the record, Dr. Comrie opined that the claimant could perform simple, repetitive tasks, noting that the claimant's anxiety would slow her work pace but she could still be productive. The claimant would be able to carry out routine social interactions, stating the claimant was early for her psychological assessment appointment, appropriately dressed, polite and cooperative. Exhibit 9F/1 – 3. . . . [Dr.] Clifford . . . affirmed these findings. Exhibit 15F/1. The undersigned gives [Dr. Comrie's and Dr. Clifford's opinions] significant weight because they were based on a review of the record, the findings are supported by the evidence and the evaluators are familiar with the Social Security Administration regulations.

AR 18.

Plaintiff argues the ALJ erred here because despite stating he was giving the opinions of Dr. Comrie and Dr. Clifford "significant weight," the mental functional limitations he assessed her with are significantly less restrictive. The Court agrees the ALJ erred here. Specifically, the ALJ found in relevant part that plaintiff had:

> **. . . the mental capability to . . . understand, remember and carry out simple, 2 to 3 step instructions; required of jobs classified at a level of SVP [specific vocational preparation] 1 and 2 or unskilled and also some jobs at the SVP 3 and 4 semi-skilled level of work.** [1] **. . . [and she could] make judgments on simple, work-related decisions; and some more complex decisions required of work at the semi-skilled level of work. . . .**

AR 15 (emphasis in original). Clearly, the ALJ's findings reveal he believed plaintiff to be

---

[1] Specific vocational preparation is defined by the Dictionary of Occupational Titles ("DOT") as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, Appendix C. According to Social Security Ruling ("SSR") 00-4p, "unskilled work corresponds to an SVP of 1-2" and "semi-skilled work corresponds to an SVP of 3-4." 2000 WL 1898704 *3.

REPORT AND RECOMMENDATION - 5

capable for performing at least some work at a level greater than the ability to perform simple, repetitive tasks that Drs. Comrie and Clifford found. The ALJ, though, provided no explanation as to why he declined to adopt the findings of Dr. Comrie and Dr. Clifford on this issue, despite giving significant weight thereto.

Defendant argues that while the ALJ did not specifically address Section I of the MRFCA form, in which Dr. Comrie checked a box indicating plaintiff was moderately, but not markedly, limited in her ability to understand, remember and carry out detailed instructions (see AR 337), "it was reasonable" based on that checked-box finding "for the ALJ to conclude [p]laintiff could perform not only unskilled jobs, but also some jobs at the SVP 3 and 4 semi-skilled level of work" (ECF #12, p. 7). But as defendant admits, "[n]ormally, the narrative explanation of the degree of limitation [contained] in Section III" of the MRFCA form, "is the critical statement of limitations found, rather than the [checked] items in Section I." ECF #12, p. 6.

Indeed, pursuant to the directive contained in defendant's Program Operations Manual System ("POMS"), "**[i]t is the narrative** written by the psychiatrist or psychologist **in [S]ection III . . . that adjudicators are to use as the assessment of RFC**." POMS DI 25020.010(B)(1)[, https://secure.ssa. gov/apps10/poms.nsf/lnx/0425020010!opendocument] (emphasis in original). Further, while it is true that the POMS "does not have the force of law," it nevertheless has been recognized as "persuasive authority" in the Ninth Circuit. Warre v. Commissioner of Social Sec. Admin., 439 F.3d 1001, 1005 (9th Cir. 2006). Nor does the undersigned find, or defendant offer any, valid reasons for not following this directive here or for inferring that the ALJ in this case decided to ignore it.

B. Dr. Lavy

Plaintiff also takes issue with the ALJ's following findings:

REPORT AND RECOMMENDATION - 6

> [Eric] Lavy[, M.D.,] opined that the claimant was capable of managing her own funds based on the unremarkable memory and concentration testing. He found the claimant had the ability to perform simple and repetitive tasks as evidenced by her filling out a psychiatric evaluation questionnaire prior to the assessment. The claimant could be expected to complete more detailed and complex tasks as she was currently running a household and denied any domestic problems. The claimant could accept instructions from supervisors as well as interact with coworkers and the public. She would be capable of performing work activities on a consistent basis with additional supervision. The claimant could maintain regular attendance in the workplace. However, the normal workday/workweek would be problematic due to interruptions from her psychiatric conditions. He did not anticipate that the claimant could deal well with the usual stress encountered in the competitive work environment. Exhibit 8F/1 – 5.
>
> The undersigned gives significant weight to Dr. Lavy's opinion that the claimant could perform simple and repetitive tasks, some more detailed and complex tasks as well as interact well at work with others; this is consistent with the unremarkable mental status examination and the claimant's ability to complete her activities of daily living. However, the undersigned does not give much weight to his assessment that the claimant's psychological impairments would interrupt the normal workday/work week. This is inconsistent with the claimant's ability to run a household, as found by the State evaluators. His comment that the claimant would have problems dealing with work stress and would need additional supervision, this is not consistent with the claimant's ability to arrive early and participate unassisted during the entire assessment without incident. . . .

AR 17-18. The undersigned agrees with plaintiff that these are not valid reasons for rejecting Dr. Lavy's opinion concerning her ability to complete a normal workday and workweek. First, the record fails to show plaintiff has been able to effectively run a household or to otherwise engage in activities of daily living at a level that is indicative of such an ability. See AR 38-41, 43-45, 137-44, 153-58, 169, 173-78, 181-86, 193, 334-35. Nor does arriving early at and participating unassisted in one psychological assessment necessarily equate with the ability to deal with the stress of a full-time job without the benefit of additional supervision.

II.     The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at

REPORT AND RECOMMENDATION - 7

642. The Court should not "second-guess" this credibility determination. <u>Allen</u>, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. <u>See</u> <u>id.</u> at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. <u>Tonapetyan</u>, 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." <u>Lester</u>, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." <u>Id.</u>; <u>see also</u> <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." <u>Lester</u>, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. <u>See</u> <u>O'Donnell v. Barnhart</u>, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." <u>Smolen v. Chater</u>, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. <u>See</u> <u>id.</u>

The ALJ discounted plaintiff's credibility in part for the following reason:

> The claimant can . . . perform a full range of daily activities which is inconsistent with the nature, severity and subjective complaints of the claimant. Dr. Lavy noted that the claimant arrived "extra early" to her appointment and was observed sitting in the waiting room comfortably, in no acute distress. Exhibit 8F/1. In the claimant's adult function report, she described taking her son to school; completing light housekeeping duties

REPORT AND RECOMMENDATION - 8

> involving vacuuming, laundry, mowing the lawn and dishes; caring for her dogs; resting; watching the television; picking up her son from school and making dinner. She was able to drive a car, shop for food, clothes and collectibles, text friends and meet them for lunch occasionally. Exhibits 6E/1 – 8, 9E/1 – 8. The claimant could also care for her children without any particular assistance. These activities do not reflect the disabling limitations alleged by the claimant, particularly concerning her reported anxiety/panic attack symptoms; the claimant stated she was able to shop at Safeway, Fred Meyers, Goodwill, grocery outlets and K-Mart department stores without interruptions from anxiety. Exhibits 6E/5, 9E/5.
>
> Third-party reports submitted by the claimant's husband were additionally considered. He described the claimant's daily activities as taking the children to school, resting, picking the kids up from school and making dinner. She could perform personal care unassisted. The claimant was able to care for her two sons, care for their pets, complete household chores, including laundry, vacuuming and dishes and shops for food and clothes. Her hobbies included painting and knitting. Exhibits 4E/1 – 8, 10E/1 – 8. Although the undersigned has fairly considered these reports, the activities listed are similar to those described by the claimant, which show few restrictions. . . .

AR 17. The Ninth Circuit has recognized "two grounds for using daily activities to form the basis of an adverse credibility determination." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). First, such activities can "meet the threshold for transferable work skills." Id. Thus, a claimant's credibility may be discounted if he or she "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Smolen, 80 F.3d at 1284 n.7.

The claimant, however, need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment." Id. In addition, the Ninth Circuit has "recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." Reddick, 157 F.3d at 722. Under the second ground in Orn, a claimant's activities of daily living can "contradict his [or her] other testimony." Id.

As discussed above, though, the record fails to show plaintiff has been able to spend a

REPORT AND RECOMMENDATION - 9

substantial part of her day effectively running a household or to otherwise engage in activities of daily living transferrable to a work setting. See AR 38-41, 43-45, 137-44, 153-58, 169, 173-78, 181-86, 193, 334-35. Nor does the record, including the third-party statements contained therein, reveal that plaintiff has "few restrictions" in her ability to run a household or engage in other similar activities. Accordingly, the undersigned finds the ALJ erred in relying on this basis for finding plaintiff to be less than fully credible.

On the other hand, the ALJ did provide other, valid reasons for discounting plaintiff's credibility:

> . . . [A]ccording to the record, the claimant has been inconsistent with taking her prescribed medications to control her anxiety symptoms. She admitted that she did not experience any side effects from the medications but often forgot to take them; her treating provider counseled the claimant to regularly take her medications and offered suggestions to help comply. In fact, in March 2010 she stated she forgot to take them for two weeks. The record also discussed that the claimant was not going to counseling and did not follow up with the recommendation to seek treatment from a behavioral specialist about her anxiety/hair pulling. According to the record, the claimant had a tendency to see counselors only one time and did not continue with treatment. Exhibits 5F/25 – 26, 29, 17F/9 – 10, 22 – 24. Despite this noncompliance some improvement has been noted. The claimant reported sleeping better when taking prescription medications. Exhibit 17F/17. Her treating provider stated the claimant's "longstanding" depression was relatively controlled with Zoloft. Exhibit 17F/22 – 23.

AR 16-17; see Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (finding ALJ did not err in discounting claimant's credibility in part due to lack of consistent treatment); Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered claimant's failure to request serious medical treatment for supposedly excruciating pain); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription of physician for conservative treatment only to be suggestive of lower level of pain and functional limitation); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (failure to assert a good reason for not following prescribed course of

REPORT AND RECOMMENDATION - 10

treatment "can cast doubt on the sincerity of the claimant's pain testimony"); see also Morgan, 169 F.3d 595, 599 (9th Cir. 1999) (claimant's credibility may be discounted on basis of medical improvement); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).

Accordingly, even though not all of the ALJ's stated reasons for discounting plaintiff's credibility were proper, this did not render the ALJ's credibility determination invalid, given that it is supported by substantial evidence in the record for the reasons set forth above. Tonapetyan, 242 F.3d at 1148; see also Bray v. Commissioner of Social Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (while ALJ relied on improper reason for discounting claimant's credibility, he presented other valid, independent bases for doing so, each with "ample support in the record"). The undersigned, therefore, finds that overall the ALJ did not err in determining plaintiff to be less than entirely credible in this case.

### III. The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her

limitations." Id.  It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.  However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ in this case assessed plaintiff with the residual functional capacity to perform "**a full range of work at all exertional levels**," but as indicated above, with certain additional non-exertional limitations that read in their entirety as follows:

> **. . . the claimant has the mental capability to: adequately perform the mental activities generally required by competitive, remunerative work as follows: understand, remember and carry out simple, 2 to 3 step instructions; required of jobs classified at a level of SVP 1 and 2 or unskilled and also some jobs at the SVP 3 and 4 semi-skilled level of work.  The claimant would have average ability to perform sustained work activities (i.e. can maintain attention and concentration; persistence and pace) in an ordinary work setting on a regular and continuing basis (i.e. 8 hours a day, for 5 days a week, or an equivalent work schedule) within customary tolerances of employers rules regarding sick leave and absence.  The claimant can make judgments on simple, work-related decisions; and some more complex decisions required of work at the semi-skilled level of work.  The claimant can respond appropriately to supervision, co-workers and deal with changes all within a stable work environment.**

AR 15 (emphasis in original).  Plaintiff argues, and once more the undersigned agrees, that the ALJ erred in so finding here, given his errors in evaluating the objective medical evidence in the record discussed above.  That is, given those errors, it is not at all clear that the RFC assessment the ALJ provided accurately describes all of plaintiff's functional limitations.

REPORT AND RECOMMENDATION - 12

## IV. The ALJ's Step Four Determination

The claimant has the burden at step four of the sequential disability evaluation process to show that he or she is unable to return to his or her past relevant work. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999). At step four in this case, the ALJ found plaintiff to be capable of performing her past relevant work as a post office clerk and as a receptionist, both of which are semi-skilled jobs. See AR 19. As discussed above, however, the ALJ erred in his evaluation of the objective medical evidence in the record and thus also in his assessment of plaintiff's residual functional capacity. Accordingly, it is far from clear as well that plaintiff could perform his past relevant work, and therefore that he is not-disabled at this step.

## V. Additional Evidence Submitted to the Appeals Council

The record contains a medical source statement of ability to do mental work-related activities completed by Eloi Hoopman, D.O., on June 8, 2010, two weeks prior to the date the ALJ issued his decision, but submitted for the first time to the Appeals Council after the ALJ already had issued that decision. See AR 1-5, 420-21. In that statement, Dr. Hoopman, one of plaintiff's treatment providers, found she had a number of moderate to severe mental functional limitations. See AR 420-21. Submitted to the Appeals Council along with that statement, but not signed by Dr. Hoopman, is a psychiatric review technique form in which plaintiff was found to meet the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.06 ("Listing 12.06" (anxiety-related disorders)).[2] See AR 422-27.

Plaintiff argues these additional materials show the ALJ's step four determination is not

---

[2] At step three of the sequential disability evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or medically equal any of the impairments listed in 20 C.F. R. Part 404, Subpart P, Appendix 1 (the "Listings"). See 20 C.F.R § 404.1520(d); Tackett, 180 F.3d at 1098. If any of the claimant's impairments meet or medically equal a listed impairment, he or she is deemed disabled. Id. The claimant, though, has the burden of proof to establish he or she meets or equals any of the Listings. See Tacket, 180 F.3d at 1098.

REPORT AND RECOMMENDATION - 13

supported by substantial evidence. This Court may consider new evidence submitted to the Appeals Council in determining whether an ALJ's decision is supported by substantial evidence. See Ramirez v. Shalala,16 8 F.3d 1449,1451-52 (9th Cir. 1993)[3]; Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000) (additional materials properly may be considered, because Appeals Council addressed them in context of denying claimant's request for review); Gomez v. Chater, 74 F.3d 967, 971 (9th Cir. 1996) (evidence submitted to Appeals Council is part of record on review to federal court).

Defendant disagrees with plaintiff, first arguing the "evidentiary value" of the psychiatric review technique form is questionable, given that it was not signed or dated. ECF #12, p. 8. But since defendant does not contest the fact that the two forms were sent together, and since there is no indication in either form or elsewhere in the record that Dr. Hoopman was not the one who completed them, the undersigned finds no real question as to the authorship thereof exists here. Citing Weetman v. Sullivan, 877 F.2d 20 (9th Cir. 1989), defendant further argues that the Court should decline to consider the additional evidence submitted to the Appeals Council, because "post-decision opinions should not be considered new and material evidence, and indeed they are

---

[3] In Ramirez, the Ninth Circuit found specifically as follows:

> Although the ALJ's decision became the Secretary's final ruling when the Appeals Council declined to review it, the government does not contend that the Appeals Council should not have considered the additional report submitted after the hearing, or that we should not consider it on appeal. Moreover, although the Appeals Council "declined to review" the decision of the ALJ, it reached this ruling after considering the case on its merits; examining the entire record, including the additional material; and concluding that the ALJ's decision was proper and that the additional material failed to "provide a basis for changing the hearing decision." For these reasons, we consider on appeal both the ALJ's decision and the additional material submitted to the Appeals Council.

Id.

REPORT AND RECOMMENDATION - 14

suspect." ECF #12, p. 9. But, as defendant notes, the additional evidence at issue in Weetman "was obtained by [the claimant] only *after* the ALJ issued an adverse determination" (877 F.2d at 23 (emphasis added)), where as in this case Dr. Hoopman's opinion was provided prior thereto. Accordingly, the same concern regarding seeking "out a new expert witness who might better support his position" noted by the Ninth Circuit in Weetman is not present here. Id. (quoting Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985)).

On the other hand, as also noted by defendant, the few progress notes in the record from Dr. Hoopman provide little in the way of objective clinical support for the essentially disabling mental functional limitations indicated in the forms he later completed. See AR 255-56, 364-65, 393-96. The undersigned, therefore, declines to find those forms undermine the evidentiary basis for the ALJ's non-disability opinion, given that it is unlikely that had the ALJ in fact considered them, he would have come to a different conclusion. See Batson, 359 F.3d at 1195 (ALJ need not accept medical opinion if inadequately supported by clinical findings); see also Weetman, 877 F.2d at 23 (declining to overturn decision of ALJ in part based on opinion of treating physician obtained post-decision, because that physician's opinion was "clearly inconsistent with the medical notes that he had made during [earlier] examinations"). Nevertheless, because as discussed elsewhere herein this matter is being remanded in light of the ALJ's failure to properly evaluate the other medical evidence in the record, the additional evidence Dr. Hoopman provided may be considered on remand as well.

VI.     This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional

REPORT AND RECOMMENDATION - 15

investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical evidence in the record, and thus with respect to plaintiff's residual functional capacity and ability to perform her past relevant work – and also other jobs as well for that matter – remanding this matter for the purpose of conducting further administrative proceedings is appropriate.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court reverse the ALJ's decision and remand this matter to defendant for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and

REPORT AND RECOMMENDATION - 16

Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **June 8, 2012**, as noted in the caption.

DATED this 22nd day of May, 2012.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 17